William Lee SHORTNACY, Appellant,

v.

The STATE of Texas, Appellee.

No. 44476.

Court of Criminal Appeals of Texas.

Jan. 11, 1972.

Brantley Pringle, Fort Worth, for appellant.

Frank Coffey, Dist. Atty., and John Garrett Hill, Asst. Dist. Atty., Fort Worth, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from an order revoking probation.

On September 5, 1969, the appellant waived trial by jury and entered a plea of guilty before the court to the offense of burglary with intent to commit theft. The punishment was assessed at 3 years, but the imposition of the sentence was suspended and the appellant was placed on probation. Among the conditions imposed were the following:

"(a) Commit no offense against the laws of this State or any other State or the United States;

\* \* \* \* \* \*

"(c) Avoid persons and places of disreputable or harmful character. . . ."

Motions to revoke probation were filed on December 10 and December 29, 1970, and on February 8, 1971. A "third amended motion" to revoke probation was filed on February 16, 1971. It alleged, among other things, that the appellant had violated his probationary conditions by unlawfully possessing a narcotic drug, heroin, on or about November 24, 1970, and on or about the same date "was in the company of a person of harmful and disreputable character, to wit: Howard Irvin Williams."

On the same date it was filed a hearing was held on the "third amended motion" to revoke.

Ivan Stine, Tarrant County Deputy Sheriff, testified that about 3:40 p. m. on November 24, 1970, he saw a Pontiac automobile parked at appellant's residence. Shortly thereafter he observed the appellant riding as a passenger in such automobile. At the time he was unable to identify the driver. He followed the Pontiac for approximately five blocks and observed the driver "run" a stop sign, and he clocked the automobile at 42 m. p. h. in a 20 m. p. h. school zone. The automobile then returned to the appellant's residence at 5725 Dennis Street "where it started from." At this point the driver got out of the vehicle and Stine recognized him as Howard Irvin Williams. As Williams started into the house Stine placed him under arrest and asked for his driver's license. He had none. Williams was returned to his vehicle, walked to the rear thereof, reached in his pants pocket and dropped a packet to the ground

and tried to kick it under the car. The packet was recovered by Officer Stine.

Stine revealed that the appellant, who was a passenger in the car, had gone into the house for a few seconds and was standing six or eight feet away when the packet was dropped, but he doubted that from appellant's position that appellant could have seen the packet fall to the ground. After its recovery appellant did ask Stine "What is it that you have found there?" and then stated, "Well, that is nothing but face powder" or "It looked like face powder." Subsequently appellant reached for the packet saying "Let me see it" but Stine refused.

Williams was issued a traffic citation only for having no operator's license. Appellant was not arrested or searched. After a chemical analysis showed the contents to be heroin a warrant of arrest was issued for Williams on November 25, 1970, and he was arrested on December 11, 1970.

The chain of custody of the packet and its contents was established and the chemist testified that the contents was heroin.

The State offered evidence that Williams' reputation for being a peaceful and law abiding citizen was bad and introduced his prior criminal record which included several felony convictions. Stine testified he knew Williams as a user of narcotics.

The appellant offered no testimony.

At the conclusion of the hearing the court found the appellant had violated his conditions of probation by being a principal to the offense of unlawful possession of heroin on November 24, 1970, and had on the same date been in the company of a harmful and disreputable character, Howard Williams.

It is appellant's contention that the court abused its discretion in revoking probation.

■ Assuming the evidence is sufficient to show that Williams was a person of disreputable and harmful character, the record does not reflect that the appellant knew Williams bore such reputation. In Steed v. State, 467 S.W.2d 460 (Tex.Cr.App.1971) this court said:

"Merely being twice in the presence of a person with a police record where no knowledge of that record is shown will not support revocation of probation for failure to avoid persons of disreputable or harmful character. See Jackson v. State, Tex.Cr.App., 464 S.W.2d 153."

Clearly the court abused its discretion in revoking probation upon this ground.

We now turn to the other basis for revocation.

■ A person may be in possession of a narcotic either individually or jointly with another person or persons. This is true, for possession in a narcotic case need not be exclusive. Evans v. State, 456 S.W.2d 911; Gomez v. State, Tex.Cr.App., 365 S.W.2d 165; King v. State, 169 Tex.Cr.R. 34, 335 S.W.2d 378; Perry v. State, 164 Tex.Cr.R. 122, 297 S.W.2d 187. Facts and circumstances may be sufficient to show an accused and others acted together in possessing a narcotic drug. Ochoa v. State, 444 S.W.2d 763 and cases there cited; Davila v. State, 169 Tex.Cr.R. 502, 335 S.W. 2d 610; 30A Tex. Digest, Poisons, Sec. 9. The term "possess" as used in Article 725b, Vernon's Ann.P.C., has been held to mean actual control, care and management of the narcotic drug. See Massiate v. State, Tex. Cr.App., 365 S.W.2d 802.

To support the finding that appellant committed a penal offense, the State relies upon Davila v. State, 169 Tex.Cr.R. 502, 335 S.W.2d 610, and Rodriguez v. State, 373 S.W.2d 258. In Davila this court said:

"The evidence is sufficient to show that the marijuana cigarettes in question were thrown from the pick-up by the appellant's companion, Rudy Flores. At such time appellant was present and driving the pick-up. Appellant's actions in driving the pick-up some sixty feet past the patrol car after being signaled to stop and in swerving the pick-up over in the ditch when Flores threw the cigarettes

out of the vehicle with the other facts and circumstances was sufficient to show that he and Flores were acting together in possessing the marihuana cigarettes in question."

Rodriguez presented a strikingly similar but somewhat stronger fact situation. Rodriguez and Delgado fled in an Oldsmobile automobile from an approaching officer. Rodriguez was driving and Delgado threw from the car a package later determined to be marihuana. Upon stopping the twosome police found marihuana traces in the torn places of the front seat where Rodriguez had been sitting.

The court upheld Rodriguez's conviction as a principal citing Davila.

Both of these cases can be distinguished from the instant case on their facts.

Williams was driving the car in which the appellant was a passenger. There is no evidence they were fleeing from an officer or even knew he was in the vicinity at the time until they returned to appellant's house. Nothing was thrown from the car. The narcotic in question was clearly in Williams' physical possession. Only after he dropped the packet and it was recovered by the officer did the appellant approach and inquire of the officer as to what he had found. And it is not clear from the record that the appellant was in a position to have seen Williams drop the packet. There is no evidence to show that the appellant was a user of narcotics or had any prior knowledge of the appearance of heroin or knowledge that Williams had heroin in his possession. There is no showing that Officer Stine had received any prior information about the appellant or Williams.

The most damaging testimony is his request to see the packet and his statement that it looked like face powder.

■ We cannot conclude the evidence sufficient to show that appellant had joint possession of the narcotic or to constitute him a principal to the offense of unlawful possession of heroin. See Articles 65–69, V.A.P.C.

■ The mere presence of the accused at the scene of a crime does not of itself justify drawing an inference that he participated therein. Reid v. State, 474 S.W.2d 702 (Tex.Cr.App.1972); Glenn v. United States, 271 F.2d 880 (6th Cir., 1959). Mere presence or even knowledge of an offense does not make one a principal. Ware v. State, Tex.Cr.App., 467 S.W.2d 256.

Only recently in Brown v. State, 481 P.2d 475, the Oklahoma Court of Criminal Appeals wrote:

"Possession means more than being where the action is; it involves the exercise of dominion and control over the thing allegedly possessed.· United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210; Fitzpatrick v. United States, 410 F.2d 513 (5th Cir., 1969). Mere proximity is insufficient. By its very nature, possession is unique to the possessor and it is not enough to place him in the presence of other persons having possession to impart possession to him. Commonwealth v. Reece, 437 Pa. 422, 263 A.2d 463, 466 (1970).

"It is true that exclusive possession is not necessary where the parties jointly possess a drug and possession may be proved by circumstantial evidence. Patterson v. State, Okla.Cr.App., 403 P.2d 515 (1965). However, it cannot be inferred from merely being present in a place where marijuana is found that the defendant had knowledge of its presence and had dominion and control. There must be additional evidence of knowledge and control to sustain a conviction."

In State v. Carr, 8 Ariz.App. 300, 445 P.2d 857, the Arizona Court wrote:

"The crime of possession of narcotics requires a physical or constructive possession with actual knowledge of the presence of the narcotic substance. Carroll v. State, 90 Ariz. 411, 368 P.2d 649 (1962). Although possession may be

shown by direct or circumstantial evidence, the evidence must link the defendant to the narcotics in such a manner and to such an extent that a reasonable inference may arise that the defendant knew of the narcotics' existence and of its whereabouts. Carroll v. State, supra." See also State v. Oare, 249 Or. 597, 439 P.2d 885.

Finding the court has abused its discretion, the order revoking probation is reversed and remanded.