

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0310-20

**MICKEY RAY PERKINS, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE ELEVENTH COURT OF APPEALS BROWN COUNTY

NEWELL, J., delivered the opinion for a unanimous Court. YEARY, J., filed a concurring opinion in which SLAUGHTER, J., joined.

Is the State required to accept a defendant's stipulation of evidence regarding an unadjudicated extraneous offense offered for

non-character conformity purposes rather than introduce testimony regarding the commission of that offense into evidence during the State's case-in-chief?  No.  We decline to extend our holding in *Tamez v. State* involving jurisdictional DWI convictions to the situation presented in this case.  We affirm the court of appeals opinion in this regard.  However, Appellant rightly complains that the court of appeals failed to review the trial court's decision to admit testimony of Appellant's unadjudicated aggravated assault over Appellant's Rule 403 objection.  Consequently, we remand the case for the court of appeals to determine whether the trial court's admission of this evidence ran afoul of Rule 403.

## Background

As she was driving, Carrol Weathermon saw blood drops in the air in front of her car.  To the right-hand side of the road, she saw Appellant standing over Lana Hyles who was on the ground. Weathermon did not know Hyles or Appellant prior to that day.  She began honking her horn and saw Appellant grab Hyles by the hair pulling her toward a car parked in the grass to the side of the road.  Weathermon called 911 and continued honking her horn.  Weathermon opened her passenger door and Hyles crawled inside as her nose bled.  Weathermon took Hyles to the emergency room.

At trial, Hyles testified that she and Appellant met that afternoon at the Brownwood Regional Medical Center so that Appellant could borrow her vehicle. Hyles previously dated Appellant, and, according to Hyles, Appellant was to drop her off at home but began heading in the wrong direction. Hyles advised Appellant to take her home, which led to an argument. The argument became physical when Appellant pushed her head into the console of the car and choked her causing her pain and difficulty breathing. Hyles bit Appellant's finger and exited the vehicle as it slowed down. She did not recall being on the ground or Appellant physically trying to force her back to the car. After Appellant left in Hyles's car, she got into Weathermon's car.

But according to Appellant, Hyles caused her own injuries. Appellant testified that Hyles asked him to bring her pain medication following a procedure she had that morning. Afterwards, he was supposed to help her run errands. Appellant explained that while they were driving, Hyles became angry at Appellant for telling her ex-husband that he had seen her with drugs. Then, as Appellant was driving, Hyles slammed the car into either park or reverse from the passenger seat. Appellant claimed he was forced to hit the brakes,

causing Hyles to hit her face on the dash.[1] Hyles was bleeding from a gash in her nose and got out of the vehicle. Appellant attempted to persuade Hyles to get back into the car but denied ever approaching her.

At the hospital, Hyles refused stiches or medical treatment for the laceration to her nose and left after less than an hour against medical advice. Hyles testified that her nose was swollen and bruised, and she had two black eyes and a small scar as a result of the cut to her nose. Ultimately, Appellant was charged by indictment with aggravated assault against a person with whom he had previously had a dating relationship.[2]

### Appellant's Unadjudicated Extraneous Offense

After Hyles testified, the State announced its intent to offer testimony regarding an unadjudicated extraneous assault committed by Appellant six months prior against a different victim, Sarah Rogers.[3] The State argued the evidence was admissible under Article 38.371 of

---

[1] On cross-examination, Hyles denied Appellant's version of events and likewise denied that she had confessed to three people that Appellant never slammed her face into the dashboard.

[2] TEX. PENAL CODE § 22.02(b)(1).

[3] Initially, the State intended to offer three witnesses related to the extraneous offense including Rogers, the responding officer, and an investigating deputy.

the Texas Code of Criminal Procedure,[4] the doctrine of chances, and Rule 404(b) of the Texas Rules of Evidence to show motive, intent, absence of mistake, or lack of accident.  The State also urged that the evidence was admissible to rebut the defensive theory, suggested through cross-examination, that Hyles caused the injury to her face.

In response, Appellant offered to stipulate to assaulting Rogers in exchange for the State's agreement not to call Rogers to testify.  The State rejected the offer and noted its intent to offer Rogers's testimony despite Appellant's offer to stipulate. Appellant then objected to Rogers testifying on the grounds that it would confuse the jury and be more prejudicial than probative.

The trial court held a hearing outside of the presence of the jury. Rogers testified that Appellant assaulted her after she woke him up following a night of drinking. She alleged he grabbed her by the neck, struck her several times in the head and ribs with a closed fist, and

---

[4] Article 38.371 provides that in a prosecution for an offense committed against a person in a dating relationship with the defendant:

> "subject to the Texas Rules of Evidence or other applicable law, each party may offer testimony or other evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense described…including testimony or evidence regarding the nature of the relationship between the actor and the alleged victim…This article does not permit the presentation of character evidence that would otherwise be inadmissible under the Texas Rules of Evidence or other applicable law."

TEX. CODE CRIM. PROC. art. 38.371.

dragged her by the hair before she was able to escape. She suffered a brain bleed and rib fractures. The State also proffered testimony from Investigator Charles Woods that Appellant claimed he awoke to Rogers attacking him, so he pushed her off him causing her to hit a nightstand resulting in her injuries. Following the hearing, Appellant again objected, arguing that the circumstances of the prior assault were different from the instant offense and thus did not establish a pattern or motive. Appellant also argued the testimony would be more prejudicial than probative and had the potential to confuse the jury.

Ultimately, the trial court ruled that the State was not required to accept Appellant's stipulation and concluded that the probative value of the evidence outweighed the prejudicial nature of the evidence. The trial court further held that the evidence was admissible under Rule 404(b) to show intent, motive, and absence of mistake and to rebut Appellant's defensive theory.[5] The trial court gave a limiting instruction prior to Rogers's testimony.[6]  The second day of Appellant's two-day trial was

---

[5] The trial court prohibited the proffered testimony from Investigator Woods during the State's case-in-chief.

[6] Neither party objected to the trial court's proposed limiting instruction. The trial court thus instructed the jury as follows:

devoted in large part to extraneous offense testimony. The State's entire rebuttal case was related to the assault against Rogers and other testimony offered by Rogers. In total, the State presented three witnesses over approximately 40 transcript pages related to Rogers's testimony.

## Direct Appeal

On appeal, Appellant argued that the trial court erred by admitting Rogers's testimony regarding the details of the extraneous offense over his objection and offer to stipulate to the assault. The State responded that the trial court's ruling should be upheld because the extraneous offense was admissible under Rule 404(b) and that the trial judge's Rule 403 ruling was within the zone of reasonable disagreement. Further, the State argued that even if the trial court erred, Appellant was not harmed.

The court of appeals held that the State was not required to accept Appellant's offer to stipulate to the commission of the unadjudicated

---

You are instructed that the evidence from Sarah Rogers concerning an alleged offense or offenses, other than the offense alleged in the indictment in this case, may only be considered if, number one, you believe beyond a reasonable doubt that the Defendant committed such other offense, if any; and, two, even then, you may only consider such evidence in determining the intent, motive, or -- of the Defendant, or absence of mistake or lack of accident, or to rebut a defensive theory, if any, in connection with the offense alleged against him in the indictment. You are not to consider this evidence for any other purpose.

offense.[7]   The court of appeals distinguished Appellant's case from *Robles v. State*, which involved a jurisdictional DWI enhancement.[8]   The court of appeals then relied upon *Rodriguez v. State* for the proposition that the State "may adduce its testimony as it sees fit, and it may or may not agree to a stipulation."[9]

The court of appeals then considered the admissibility of the extraneous offense evidence.   It properly set out the legal standards attendant to Rules 404(b) and 403 of the Texas Rules of Evidence.[10] The court held that the trial court's Rule 404(b) ruling was not outside the zone of reasonable disagreement, but it does not appear that the court performed the requested review of the trial court's Rule 403 ruling. The entire analysis is as follows:

> It is clear from the trial court's statement that the trial court found Rogers's testimony to be admissible under Rule 404(b) and also conducted the necessary two-prong test under Rule 403.   *See Patterson v. State*, 496 S.W.3d 919, 929 (Tex. App.---Houston [1st Dist.] 2016, pet. ref'd.) (when the trial court weighs the relevance of the evidence against its prejudicial impact, it need not formally announce on the

---

[7] *Pekins v. State*, No.11-18-00037-CR, 2020 WL 976941 at * 3 (Tex. App.—Eastland 2020, pet. granted).

[8] *Id.* at *2 n.2 (citing *Robles v. State*, 85 S.W.3d 211 (Tex. Crim. App. 2002) (holding it is error to admit evidence of prior convictions over offer to stipulate to jurisdictional priors because of the danger of unfair prejudice).

[9] *Id.* (citing *Rodriguez v. State*, 373 S.W.2d 258, 259 (Tex. Crim. App. 1963).

[10] *Id.* at *3.

record that it has conducted this balancing test). The trial court's ruling under 404(b) was not outside the zone of reasonable disagreement. *See Grider v. State*, 69 S.W.3d 681, 689 (Tex. App.---Texarkana 2002, no pet.) (upholding the admission of testimony from defendant's prior girlfriend about a previous assault). Further, because "[w]e generally presume a jury followed a trial court's instruction regarding consideration of evidence," any potential harm was mitigated by the trial court's limiting instruction to the jury. [*Hung Phuoc Le v. State*, 479 S.W.3d 462, 471 (Tex. App.---Houston 14th Dist.] 2015, no pet.)][11]

The court of appeals did not discuss the probative strength of the evidence, the risk of prejudice, the amount of time necessary to develop the evidence, or the State's need for the evidence.[12] Instead, the court of appeals concluded that the trial court did not abuse its discretion in admitting the extraneous offense.

## Discretionary Review

Appellant raised two grounds for discretionary review.

I.      The Court of Appeals erred in holding the evidence legally sufficient to establish serious bodily injury.

II.     The Court of Appeals erred in holding the trial court acted within its discretion in allowing the State to introduce extensive details about an extraneous offense during the guilt-innocence phase when Perkins was willing to stipulate to it.

---

[11] *Id.*

[12] *See Montgomery v. State*, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1999) (opinion on rehearing) (setting out relevant criterial for balancing probative value of extraneous offense evidence against the potential for unfair prejudice).

We granted review only on the second issue.

Appellant appears to only challenge two aspects of the court of appeals opinion: 1) the refusal to require the State to accept an offer of stipulation; and 2) the lack of a Rule 403 analysis. He argues that the stipulation, if accepted, would have rendered the details of the unadjudicated extraneous offense unfairly prejudicial. And he argues that the court of appeals failed to conduct a proper review of the trial court's Rule 403 decision.

On Appellant's first critique, we agree with the State that it was not required to accept Appellant's offer to stipulate. But on the second, we agree with Appellant that the court of appeals did not conduct an analysis of whether the probative value of Appellant's unadjudicated aggravated assault was substantially outweighed by the danger of unfair prejudice. Therefore, we affirm the court of appeals holding that the State was not required to accept Appellant's offer to stipulate, but we remand to the court of appeals to conduct an analysis of whether the trial court abused its discretion in admitting the unadjudicated offense evidence over Appellants Rule 403 objection.

**Stipulations to Prior Offenses**

As the court of appeals pointed out, generally the State may agree or not to offers for the stipulation of evidence as it sees fit.[13]  However, in *Tamez v. State*, we recognized a limited exception to this general rule.[14]  There, the State charged the defendant with felony DWI and alleged six different DWI convictions as jurisdictional elements in the indictment.[15]  The defendant agreed to stipulate to two of the six DWI convictions if the State were foreclosed from mentioning his other convictions in any way to the jury.[16]  This Court held that the State was required to accept the defendant's stipulation to two jurisdictional convictions  because proof of any remaining DWI convictions would only serve to improperly prove the defendant's "bad character" and inflame the jury's prejudice.[17]  Judge Cochran summed up the scope of the holding in *Tamez* as follows:

1. In a felony D.W.I. case;

2. When the defendant offers to stipulate to the two jurisdictionally required D.W.I. prior convictions;

---

[13] *Buitron v. State*, 519 S.W.2d 467, 471 (Tex. Crim. App. 1975) (citing *Rodriguez v. State*, 373 S.W.2d 258 (Tex. Crim. App. 1963)).

[14] *Tamez v. State*, 11 S.W.3d 198, 202-03 (Tex. Crim. App. 2000).

[15] *Id.* at 199.

[16] *Id.*

[17] *Id.* at 202-03.

3.     The defendant has made an offer the State cannot refuse; and

4.     That written stipulation substitutes for the admission of other extrinsic evidence of the defendant's prior D.W.I. convictions.[18]

The Court justified this exception as a balance between Article 36.01 of the Code of Criminal Procedure and the United States Supreme Court's interpretation of Federal Rule 403 in *Old Chief v. United States*.[19] As we noted in *Tamez*, Article 36.01 of the Code of Criminal Procedure authorizes the State to read the indictment allegations of two jurisdictional DWI convictions, which are required when prosecuting a felony DWI.[20]  However, in *Old Chief*, the United States Supreme Court explained that when the fact of a conviction is an element of an offense, the details of the conviction have very little probative value in the face of an offer to stipulate.[21]  In those circumstances, allowing the government to prove the particular felony that led to the defendant's status as a felon could substantially prejudice the defendant by allowing

---

[18] *Robles v. State*, 85 S.W.3d 211, 216 (Tex. Crim. App. 2002) (Cochran, J. dissenting).

[19] *Old Chief v. United States*, 519 U.S. 172 (1997) (a trial court abuses its discretion when it admits the full record of a prior conviction for assault, over an offer to stipulate to the prior conviction element in a felon in possession of a firearm case).

[20] *Tamez*, 11 S.W.3d at 201 (citing TEX. CODE CRIM. PROC. art. 36.01).

[21] *Old Chief*, 519 U.S. at 190-92.

the jury to improperly focus on the previous crime rather than the charged offense.[22]  Consequently, the Supreme Court held that the government was precluded from proving what felony the defendant had previously been convicted of if he chose to stipulate that he was indeed a felon.[23]

In *Tamez*, we harmonized Article 36.01 with the reasoning of *Old Chief* by requiring the State to accept the defendant's offer to stipulate to two DWI convictions, but still allowing the State to read only two allegations of DWI convictions contained in the indictment.

> In cases where the defendant agrees to stipulate to the two previous DWI convictions, we find that the proper balance is struck when the State reads the indictment at the beginning of trial, mentioning only the two jurisdictional prior convictions, but is foreclosed from presenting evidence of the convictions during its case-in-chief.  This allows the jury to be informed of the precise terms of the charge against the accused, thereby meeting the rationale for reading the indictment, without subjecting the defendant to substantially prejudicial and improper evidence during the guilt/innocence phase of trial.  Following this logic, any prior convictions beyond the two jurisdictional elements should not be read or proven during the State's case-in-chief---as long as the defendant stipulates to the two prior convictions---as they are without probative value and can serve only to improperly

---

[22] *Id.* at 191 ("the only reasonable conclusion was that the risk of unfair prejudice did substantially outweigh the discounted probative value of the record of conviction, and it was abuse of discretion to admit the record when an admission was available.").

[23] *Id.*

prove the defendant's "bad character" and inflame the jury's prejudice.[24]

As the State correctly points out, the exception recognized in *Tamez* was born out of and applied to a case in which the existence of prior convictions must be alleged in an indictment and proven in the State's case-in-chief. We have not extended this exception beyond that context. In this case, Appellant's aggravated assault conviction did not need to be alleged in the indictment or proven as part of the State's case-in-chief. Accordingly, the rationale articulated in *Old Chief* and *Tamez* for requiring the State to accept Appellant's offer to stipulate to otherwise extraneous convictions does not apply to Appellant's case.[25] We affirm the court of appeals holding that the State was not required to accept Appellant's offer to stipulate to the unadjudicated offense.

### Admissibility of Extraneous Offenses

Extraneous-offense evidence is generally admissible if the evidence is relevant to a fact of consequence apart from its tendency to

---

[24] *Tamez*, 11 S.W.3d at 202-03.

[25] Appellant relies upon our decision in *Robles v. State*, 85 S.W.3d 211 (Tex. Crim. App. 2002). Though *Robles* dealt with a slightly different factual scenario than *Tamez*---the State only alleged two jurisdictional convictions in *Robles,* but it alleged six in *Tamez*---it still presented an application of our holding in *Tamez*. Nothing in *Robles* suggests that our holding in *Tamez* applies to unalleged, non-jurisdictional offenses the State offers for non-character-conformity purposes.

prove character conformity.[26]  But even if a court determines that evidence is relevant and admissible for a non-conformity purpose, Rule 403 may still preclude its admission if the trial court determines that the probative value of the evidence is substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, undue delay or needlessly presenting cumulative evidence.[27]  Unfair prejudice refers to the evidence's "tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged."[28]  In considering a Rule 403 objection, the trial court must engage in a balancing test that considers: (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and (4) the proponent's need for the evidence.[29]  We

---

[26] *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).

[27] Tex. R. Evid. 403.

[28] *State v. Melcher*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005).

[29] *Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019).

review a trial court's decision to admit or exclude extraneous offense evidence under Rules 404(b) and 403 for an abuse of discretion.[30]

As mentioned above, Appellant argues that the court of appeals erred in failing to conduct an appellate review of the trial court's Rule 403 analysis. We agree with Appellant. As we explained in *Mozon v. State*:

> In reviewing the trial court's balancing test determination, a reviewing court is to reverse the trial court's judgement "rarely and only after a clear abuse of discretion." The reviewing court, however, cannot simply conclude "the trial court did in fact conduct the requiring balancing test and did not rule arbitrarily and capriciously." The trial court's ruling must be measured against the relevant criteria by which a Rule 403 decision is made.[31]

In this case, the court of appeals merely held that the trial court conducted the required balancing test. It did not measure the trial court's ruling against the relevant criteria by which a Rule 403 decision is made. There was no consideration of (1) how compellingly the extraneous evidence serves to make a fact of consequence more or less probable; (2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way"; (3) the time

---

[30] *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).

[31] *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (internal citations omitted).

needed to develop the evidence; or (4) the force of the proponent's need for this evidence to prove a fact of consequence.[32]

## Conclusion

The court of appeals properly held that the State was not required to accept Appellant's offer to stipulate to the unadjudicated assault. We affirm the court of appeals holding in this regard. However, the court of appeals upheld the trial court's admission of extraneous offense evidence without conducting a proper review of the trial court's Rule 403 ruling. We remand the case for consideration of this aspect of Appellant's argument.

Filed: September 7, 2022

Publish

---

[32] *Id.* (setting out the relevant criteria a reviewing court is to consider when evaluating a trial court's Rule 403 decision).